| | |
|---|---|
| LOLA MAE HENDERSON,<br><br>   Plaintiff,<br><br>  v.<br><br>UNITED STATES,<br><br>   Defendant. | Case No. 23-cv-1262-pp |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (DKT. NO. 6) AND DISMISSING CASE**

On September 25, 2023, the plaintiff—representing herself—filed a complaint alleging that in 1995, medical providers at a Veteran's Administration (VA) hospital surgically implanted an "Artificial Silicon Retina microchip" (ASR chip) in her eye(s) without her consent. See Dkt. Nos. 1; 1-1. On November 27, 2023, the defendant filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the plaintiff's claims are time-barred. Dkt. No. 6. The court agrees and will grant the defendant's motion to dismiss.

**I.   Background**

   A.   Complaint

On September 25, 2023, the plaintiff filed a complaint and paid the filing fee. Dkt. No. 1. The complaint asserts claims of "medical malpractice" and "fraudulent concealment" against the "United States" under the Federal Tort Claims Act (FTCA), based on the plaintiff's allegations that VA medical

1

providers implanted an ASR chip in her eyes without her consent. Id. at 2. The plaintiff attached to her complaint a Standard Form 95,[1] which she signed on December 27, 2022 and submitted to the Department of Veteran's Affair. See Dkt. No. 1-1. In her Standard Form 95, the plaintiff explains that "[a]fter the Veterans Administration (VA) Greater Los Angeles Healthcare System-West Los Angeles Medical Center was under probe (Oct 1995), [she] was admitted there for pneumonia (Nov 1995)." Dkt. No. 1-1 at 3. The plaintiff asserts that "[a]t sometime during [her] stay, [she] was taken to the operating room where retina chips were implanted in [her] eye(s); a 'trespass to [her] person'; without [her] consent; and without [her] knowledge." Id. The plaintiff alleges that the West Los Angeles VA hospital and the eye surgeon breached "a duty to exercise reasonable care" by (1) "[p]erform[ing] eye surgery on [the plaintiff] without [her] consent and knowledge[;]" (2) "fail[ing] to get [the plaintiff's] consent for eye surgery(ion)[;]" (3) leaving "a retained object . . . in [the plaintiff's] eye(s), ASR Devices/retina chip[;]" and (4) "perform[ing] [the surgery] absent a diagnosis of macular degeneration; or retina pigmentosa; and a complaint of visual changes from [the plaintiff]."

The complaint contains what appears to be a webpage from "Optobionics," which describes the development and use of "Artificial Silicon

---

[1] Standard Form 95 is a form used to present claims against the United States under the Federal Tort Claims Act (FTCA) for property damage, personal injury, or death allegedly caused by a federal employee's negligence or wrongful act or omission occurring within the scope of the employee's federal employment. See Murrey v. United States, 73 F.3d 1448, 1452 (7th Cir. 1996) (describing the purpose and content of Standard Form 95).

2

Retina microchips" (ASR chips). Id. at 5. This webpage says that the ASR chip "was designed to stimulate damaged retinal cells from within the retina to allow the cells to recreate visual signals that are processed and sent to the brain." Id. The webpage further states that[,] "[w]hen surgically implanted under the retina—in a location known as 'subretinal space'—the ASR chip is designed to produce visual signals similar to those produced by the photoreceptor layer." Id.

The plaintiff alleges that the West Los Angeles VA (LA VA) hospital and the Clement J. Zablocki (CJZ) medical center "intentionally failed to disclose to [her] that the eye surgery(ies); and surgical implantation of the ASR Device/retina chip were performed on [her] while [she] was a patient in LA VA Hospital [where] [she] was admitted for pneumonia." Dkt. No. 1 at 4. The plaintiff says that "[b]oth VA Hospitals remained silent and failed to disclose to [her] what had happened to [her], during each of [her] eye clinic appointments (total 42)." Id. at 4. The plaintiff accuses both VA Hospitals of engaging in an attempted "coverup," which included fabricating evidence and falsifying her medical records. Dkt. Nos. 1 at 2; 1-1 at 3. The plaintiff alleges that "CJZ employees ordered CT scan of [her] head/eyes in furtherance of the coverup." Dkt. No. 1 at 4. The plaintiff claims that "[she] knew something was wrong and [she] was suffering everyday of [her] life, so [she] kept asking for eye surgery and they kept telling [her] 'NO.'" Id. The plaintiff states that, "[a]fter each eye clinic appointment, the eye clinic would automatically schedule [her] for

3

another appointment while repeating 'there is nothing there' year after year." Id.

Throughout the complaint and the Standard Form 95, the plaintiff describes the "psychological abuse" she has suffered at the hands of the "Behavior Tech."[2] Dkt. Nos. 1 at 2-3; 1-1 at 3-6. The plaintiff alleges that "[t]he 'Behavior Tech' refuses to allow [the plaintiff] privacy in [her] business; personal life; bedroom; and bathroom." Dkt. No. 1-1 at 5. She asserts that "[t]he 'Behavior Tech' asks [her] anything it wanted to, [she] can't escape, and regardless of how its questions affects [her]." Id. The complaint and the Standard Form 95 contain more than sixty "quotes from the 'Behavior Tech[,]'" which include many abusive and threatening statements. Dkt. Nos. 1 at 3; 1-1 at 4-5. The plaintiff asserts that the "Behavior Tech" has "placed [her] in danger for [her] health; body; and life[,]" including at least one occasion where the "Behavior Tech" "cut[] of[f] [her] air (O2)." Dkt. No. 1-1 at 5. The plaintiff alleges that the VA hospitals have displayed a "lack of concern" regarding the "Behavior Tech's" mistreatment of her. Id.

The plaintiff alleges that she has suffered a wide range of injuries from the alleged conduct. Dkt. No. 1 at 6. For example, the plaintiff claims she has

---

[2] It is not clear who or what the plaintiff is referring to when she says "the 'Behavior Tech.'" In the complaint and the Standard Form 95, the plaintiff uses quotation marks when referring to "the 'Behavior Tech'" and describes "the 'Behavior Tech'" as an "it." See Dkt. Nos. 1 at 2-3; 1-1 at 3-6. It is unclear if by "the 'Behavior Tech'" the plaintiff is referencing a person, an organization or some other entity. The term "behavior tech" is sometimes used as a shorthand reference to a "behavior technician"—a professional who works one-on-one with people suffering from developmental and other disorders. See, e.g., https://learnbehavioral.com/blog/what-in-the-world-is-a-behavior-tech.

4

suffered "psychological abuse," "mental anguish," "indignity," "torture," "sadness/depression" and a "loss of quality of life." Id. The plaintiff also states she has "no privacy" because "there is a camera + microphone." Id. The plaintiff requests "2 million dollars in damages; and an order for eye surgery to remove the ASR Device/retina chip immediately." Id.

B. The Defendant's Motion to Dismiss

On November 27, 2023, the defendant filed a motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6). Dkt. No. 6. The defendant argues that the plaintiff's claims "are barred by the statute of limitations because she failed to present them in writing to an appropriate federal agency within two years after the claims accrued as required by 28 USCS §2401(b)." Dkt. No. 7 at 4. The defendant contends that "[t]he accrual is irrespective of continuous treatment and instead focuses on when the claimant knew or should have known of the injury." Id. (citing Goodhand v. United States, 40 F.3d 209, 212 (7th Cir. 1994)). The defendant recounts that the plaintiff's Standard Form 95, which the plaintiff signed on December 27, 2022, "lists the date of the alleged incident as November 1995, over 27 years from the time of submitting these claims." Id. at 2. It observes that the plaintiff alleges that following the 1995 incident, she experienced "eye issues" that "necessitated . . . [the plaintiff to] repeatedly have follow-up eye clinic appointments with multiple V.A. hospitals[,]" and that the plaintiff "admits to attending 42 different eye clinic appointments[.]" Id. at 4 (citing Dkt. No. 1 at 1, 4). The defendant states that "[d]uring these appointments, Plaintiff admits that she 'knew something was

5

wrong . . . every day of my life, so I kept asking for eye surgery . . . [.]'" Id. (citing Dkt. No. 1 at 1, 4). The defendant concludes that, "[b]ecause accrual of the statute does not wait for Plaintiff to learn of the full extent of her injuries, it is implausible to suggest that she did not know or should not have known enough to investigate whether a claim existed over the course of nearly three decades." Id. at 5. The defendant asks the court to dismiss the plaintiff's claims under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[3] Id.

On January 2, 2024, the plaintiff filed a brief opposing the motion to dismiss. Dkt. No. 10. The plaintiff presented five numbered arguments for why the court should not dismiss her complaint.[4] See Id. First, the plaintiff argues that "[she] could not have learned that the eye(s) surgery was done on [her] in 1995; and that the ASR Device/retina chip had been implanted in [her] eye(s)." Id. at 3. The plaintiff explains that the "doctor kept [her] sedated" during the procedure, so she has "no memory" of the emergency room beyond "waking up to a loud sound[] and finding [her] hair matted." Id. The plaintiff asserts that the "statute of limitations does not begin to run until the claimant has

---

[3] The defendant's motion also asks that if the court denies the motion to dismiss, the court order the plaintiff to file a more definitive statement because the complaint does not comply with the local rules. Dkt. No. 7 at 5-6 (citing Civil Local Rule 10(a) (E.D. Wis.)). Because the court is granting the defendant's motion to dismiss, the court will not address the defendant's request for a more definitive statement.

[4] The plaintiff also presented a sixth numbered statement, which says that "[the plaintiff] wish[es] to respond to attorney McLeod['s] motion for plaintiff amending the complaint when the court so order[s] it." Dkt. No. 10 at 9.

6

discovered, or has had a reasonable opportunity to discover all the essential elements of a possible cause of action." Id. at 3-4 (citing Bridgford v. United States, 550 F.2d 978 (4th Cir. 1977)).

Second, the plaintiff contends that "[t]he 'Behavior Tech' does what it does from afar, [the plaintiff has] some unknown person talking to [her]; the showing to [her] of pictures and short movies when [her] eyes are closed; the infliction of pain to [her] body; and its ability to see what [she is] doing." Id. at 5. The plaintiff says that "[t]he ASR Device enables the 'Behavior Tech' to use audio; camera; and electrical stimulation." Id. The plaintiff states that "[t]he 'Behavior Tech' is a consequence of a surgical procedure that was done without [the plaintiff's] consent to burden [her]; and make [her] suffer." Id. (citing De Witt v. United States, 593 F.2d 276 (7th Cir. 1979)).

Third, the plaintiff seems to argue that her ability to discover her medical records was delayed because VA medical providers deceptively told her that her medical records would be at the Ed Hines VA Hospital in Illinois, even though the plaintiff never had been a patient there. Id. at 6. (She also complains that in 2023, she tried to speak to Dr. Alan Chow, an eye researcher at Ed Hines VA Hospital,[5] to ask him to be an expert witness for her, but that he refused. Id.)

Fourth, the plaintiff asserts that "[she] did not 'seek follow-up eye care year after year';" instead the plaintiff claims "[she] would automatically be rescheduled, which still presently happens." Id. at 7. However, the plaintiff

---

[5] A Dr. Alan Chow, an ophthalmologist in Glen Ellyn, Illinois has a web site on which he states that he is "the inventor of the Artificial Silicon Retina." https://www.alanchowmd.com.

7

states that "[o]ccasionally, [she] did get urgent care, seeking medical treatment for eye irritation and swelling from the attacks/abuse on [her] eyes by the 'Behavior Tech[.]'" Id.

Finally, the plaintiff argues that "[her] Standard Form 95 claim was timely filed Dec 27, 2022." Id. at 8. The plaintiff supports this argument by contending that "[t]here is no statute of limitation in this case, the 'Behavior Tech' conduct is continuous; and the defendants of both V.A. Hospitals are using falsified evidence from West Los Angeles V.A. Hospital and Clement J. Zablocki V.A. a Hospital employees." Id. (citing Dkt. No. 10-1 at 5-11).[6]

On January 9, 2024, the defendant filed its reply brief. Dkt. No. 11. The defendant avers that "[a]n FTCA claim accrues when an individual knows enough to tip them off that a government act (or omission) may have caused their injuries; or a reasonable person in the individual's position would have known enough to prompt a deeper inquiry." Id. at 3 (citing Blanche v. United States, 811 F.3d 953, 958 (7th Cir. 2016)). The defendant argues that "Congress did not intend for the accrual of a claim to await awareness by the Plaintiff that their injuries were negligently inflicted." Id. (citing United States v. Kubrick, 444 U.S. 111, 123 (1979)). The defendant observes:

> Plaintiffs such as [the plaintiff], armed with the facts that a harm have been done to them "can protect [themselves] by seeking advice

---

[6] With her brief in opposition, the defendant submitted several pages of her medical records from the VA. Dkt. No. 10-1. These medical records detail several appointments, the first on March 22, 1996 and the last on September 25, 2001. Id. at 5, 11. As the court discusses later in this decision, the court may not consider these medical records in deciding the pending motion to dismiss.

8

> in the medical and legal community . . . [t]o excuse [them] from promptly doing so by postponing the accrual of [them] claim would undermine the purpose of the limitations statute, which is to require the reasonably diligent presentation of tort claims against the Government."

Id. (quoting Kubrick, 444 U.S. at 123). The defendant argues that the "[p]laintiff in this matter was prompted with enough information that a reasonable person would make a deeper inquiry as early as December 1995, the date of the alleged surgery." Id. The defendant maintains that although the plaintiff asserts that she was unconscious during the procedure, there were other indicators that would have led a reasonable person to make a deeper inquiry. Id. at 3-4. For example, the defendant says that the plaintiff "admits to waking up and feeling her hair matted after the alleged surgery took place[;]" and that the plaintiff experienced eye issues after the procedure that "not only required the prescription of medication, but also reportedly caused visual hallucinations wherein she saw colors that were vivid and more pronounced." Id. The defendant contends that "[t]he Court should not now, 28 years later, permit Plaintiff to bring forth the allegations of a claim that a reasonably diligent person would have brought decades ago." Id. at 4. The defendant concludes by asking the court to "dismiss this action with prejudice as Plaintiff has failed to bring forth the allegations with[in] the time afforded by the FTCA." Id.

On January 22, 2024, the plaintiff filed letter refuting portions of the defendant's reply brief. Dkt. No. 15. The plaintiff contends that "[she] do[es] not have nor ever had 'visual hallucinations,' [she] do[es] not know where Attorney

9

Q. McLeod is getting his information from for his reply; and [she has] never consented to research in any form nor wanted to be a part of any research." Id. at 1.

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to assert by motion that the complaint fails to state a claim upon which a federal court can grant relief. "A Rule 12(b)(6) motion tests 'the legal sufficiency of the complaint,' as measured against the standards of Rule 8(a)." Gunn v. Cont'l Cas. Co., 968 F.3d 802, 806 (7th Cir. 2020) (quoting Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 526 (7th Cir. 2015)). In deciding a 12(b)(6) motion to dismiss, courts may consider "only the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." Geniosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012); see also Palay v. United States, 349 F.3d 418, 425 n.5 (7th Cir. 2003) (acknowledging that the district court did not err when it considered the plaintiff's Standard Form 95 because, "in resolving a motion to dismiss, the district court is entitled to take judicial notice of matters in the public record").

A complaint need not include detailed factual allegations, but it must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it "pleads factual content that allows the court to draw the reasonable inference that the

10

defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In ruling on a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the plaintiffs' favor." Roberts v. City of Chicago, 817 F.3d 561, 564 (7th Cir. 2016). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" so "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, "it is also well established that pro se litigants are not excused from compliance with procedural rules." Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008).

B.  Statute of Limitations

"The application of a statute of limitations is an affirmative defense." Lewis v. Stenz, 637 F. App'x 943, 944 (7th Cir. 2016). Because complaints "typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss if 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" Brooks v. Ross, 578 F.3d 574, 579 (7th Cir. 2009) (quoting U.S. v. Lewis, 411 F.3d 838, 842 (7th

11

Cir. 2005)). In other words, "[i]t is appropriate to consider the statute of limitations at this stage if the 'relevant dates are set forth unambiguously in the complaint,' and if the plaintiff effectively 'pleads [her]self out of court' by providing enough facts in [her] pleading to establish a timing defect in his complaint." Thomas v. Burlingame, Case No. 10-C-1073, 2011 WL 3847080, at *1 (E.D. Wis. Aug. 26, 2011) (quoting Brooks, 578 F.3d at 579; Cancer Found. v. Cerberus Cap. Mgmt., 559 F.3d 671, 674–75 (7th Cir. 2009)). So, when faced with a Rule 12(b)(6) motion to dismiss a complaint as time-barred, "the question is only whether there is *any* set of facts that if proven would establish a defense to the statute of limitations." Clark v. City of Braidwood, 318 F.3d 764, 768 (7th Cir. 2003) (emphasis in original).

Under the FTCA, a tort claim against the United States is "barred unless it is presented in writing to the appropriate Federal agency *within two years after such claim accrues* or unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 USCS §2401(b) (emphasis added). "There are two ways for a claim to accrue under the FTCA—one subjective and the other objective." P.W. by Woodson v. United States, 990 F.3d 515, 519 (7th Cir. 2021). An FTCA claim accrues when either "(1) the individual becomes subjectively aware of the government's involvement in the injury, or (2) the individual acquires information that would prompt a reasonable person to inquire further into a potential government-related cause of the injury, whichever happens first." E.Y. *ex. rel.* Wallace v. United States, 758 F.3d 861, 866 (7th Cir. 2014). In other

12

words, a plaintiff's claim "accrues the first time the plaintiff knew, or a reasonably diligent person in the plaintiff's position, reacting to any suspicious circumstances of which he or she might have been aware, would have discovered that an act or omission attributable to the government could have caused his or her injury." Arroyo v. United States, 656 F.3d 663, 669 (7th Cir. 2011).

### III. Discussion

As the court explained earlier, a Rule 12(b)(6) motion "tests 'the *legal* sufficiency of a complaint,'" not the *factual* allegations. Gunn, 968 F.3d at 806 (citations omitted). That means that when deciding a 12(b)(6) motion to dismiss, courts may consider "only the complaint itself, documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." Geniosky, 675 F.3d at 745 n.1; see also Palay, 349 F.3d at 425 n.5. "[I]f matters outside the pleadings are presented to a court on a Rule 12(b)(6) motion, the court normally must treat the motion as one for summary judgment and give all parties a reasonable opportunity for discovery." Squires-Cannon v. White, 864 F.3d 515, 517 (7th Cir. 2017) (citing Fed. R. Civ. P. 12(d)). Although the court recognizes that the plaintiff attached several medical records to her opposition brief, because the plaintiff did not attach the medical records to her complaint and they are not "critical to the complaint," the court will not consider them in its decision.

Having reviewed the plaintiff's complaint and the attached Standard Form 95, the court concludes that the plaintiff's claims began accruing many years before the plaintiff signed her Standard Form 95 on December 27, 2022. Based on the plaintiff's allegations, a reasonable person in her circumstances would have had enough information to prompt an inquiry into the cause of her alleged injuries years, if not decades, before she signed the Standard Form 95. The plaintiff's claims all stem from a surgery that she alleges occurred near the end of 1995. Dkt. Nos. 1 at 4; 1-1 at 3. Following the surgery, the plaintiff states she attended approximately forty-two eye appointments, and that "[she] knew something was wrong and [she] was suffering everyday of [her] life, so [she] kept asking for eye surgery and they kept telling [her] 'NO.'" Dkt. No. 1 at 4. The plaintiff says that, "[a]fter each eye clinic appointment, the eye clinic would automatically schedule [her] for another appointment while repeating 'there is nothing there' *year after year*." Id. (emphasis added). Based on these allegations, the plaintiff clearly had concerns about something being wrong with her eye or eyes for years following the 1995 surgery; these concerns appear to have surfaced only *after* the 1995 surgery, because it was only *after* that surgery that she began seeing medical professional after medical profession, all of whom continually told her that "'there is nothing there' year after year." Id. A reasonably diligent person in the plaintiff's circumstances would have had enough information to suspect, many years before the plaintiff signed her Standard Form 95 on December 27, 2022, that the 1995 surgery had something to do with the suffering she was experiencing.

14

Perhaps, as the plaintiff argues, it did not occur to her right away, in the two years after the 1995 surgery, that the surgery might be the cause of her suffering. But twenty-seven years passed between the 1995 surgery and December 27, 2022 (the date she signed the Standard Form 95). Given all the trips to medical appointments and all the symptoms the plaintiff says she has been suffering continually during that time, it had to have occurred to the plaintiff sometime before December 27, 2022 that the 1995 surgery could be the cause of the issues. Because the plaintiff's claims accrued more than two years before she exhausted her administrative remedies by filing the Standard Form 95, the plaintiff's claims are time-barred under the FTCA's statute of limitations. The court will grant the defendant's motion to dismiss. Dkt. No. 6.

**IV. Conclusion**

The court **GRANTS** the defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. No. 6.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted. The clerk will enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 4th day of November, 2024.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**